UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>v.<br><br>NAM NHAT NGO,<br><br>                       Defendant. | Case No.:  97-CR-3397-GPC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR REDUCTION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)**<br><br>**[ECF No. 60]** |

Defendant Nam Nhat Ngo ("Ngo") has filed a motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c)(1).  (ECF No. 60.)  The Government opposes.  (ECF No. 66.) ("Opp.")  For the reasons that follow, Ngo's motion is GRANTED.

## I.    BACKGROUND

Ngo was charged with two counts of armed bank robbery in violation of 18 U.S.C. § 2113, and two counts of using a firearm during and in relation to those robberies, in violation of 18 U.S.C. § 924(c)(1)(A).  (ECF No. 1.)  The charges arose out of two armed bank robberies during August and September of 1997. (*Id.*)  The Government contended

that Ngo had committed the robberies by threatening customers and tellers with a pistol and semi-automatic handgun. (ECF No. 23.) A jury found Ngo guilty of all four counts. (ECF No. 28.)

Ngo was sentenced to a term of imprisonment of 370 months.  (ECF No. 60 at 3.) On the two counts of armed bank robbery, the court sentenced Ngo to "the low end of [the] guideline range in light of [his] background" and the information he put forth at sentencing, resulting in a sentence of 70 months for each count to run concurrently. (ECF No. 60-2, Exhibit D at 41; ECF No. 33.)  On the Section 924(c) counts, Ngo was sentenced to the mandatory minimum of five years for the first count and the mandatory minimum of twenty years for the second count, to be served consecutively.  (ECF No. 60-2, Exhibit D at 42; ECF No. 33.)

Ngo is currently serving his sentence at Sandstone FCI in Minnesota.  (ECF No. 60 at 5.)  Ngo has served about 278.5 months, or over 75 percent of his sentence, and has over three years remaining before his projected release date.  (ECF No. 67 at 1; Opp. at 4.)  Ngo filed the present motion to ask the Court to reduce his sentence to time served pursuant to the First Step Act.  (ECF No. 60.)

## II.    Discussion

Ngo moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or

2

97-CR-3397-GPC

supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or
    (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

. . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Defendant has satisfied the administrative exhaustion requirement, and second, whether Defendant has demonstrated "extraordinary and compelling" reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*. As one district court recently explained:

The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling

3

the subsection amending § 3582, "Increasing the Transparency and Use of
Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5,
2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its
purpose was to "expand[s] compassionate release" and "expedite[] compassionate
release applications").

*United States v. Young,* No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn.
Mar. 4, 2020); *see also United States v. Maumau,* No. 2:08-CR-00758-TC-11, 2020 WL
806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step
Act was to increase the use and transparency of compassionate release.").

### A. Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement which must be satisfied
before a defendant may move the court for a sentencing reduction.  On April 29, 2020,
Ngo submitted a request for release pursuant to 18 U.S.C. § 3582 to the Warden of
Sandstone FCI.  (ECF No. 60-2, Exhibit G.)  His request was premised on changes in
sentencing guidelines and protocols as a result of the First Step Act.  (*Id*. at 39.)  Ngo's
request to the Warden was denied on June 3, 2020.  (*Id*.)  The Government concedes Ngo
has properly exhausted his administrative remedies.  (ECF No. 66 at 7, n. 2.)
Accordingly, Ngo has satisfied the exhaustion requirement, and the Court may adjudicate
his compassionate release motion.

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of
"extraordinary and compelling reasons," and only if "such a reduction is consistent with
applicable policy statements issued by the Sentencing Commission."  18 U.S.C. §
3582(c)(1)(A).  Section 1B1.13 of the Sentencing Guidelines further explains that a
sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court
determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

(1) (A) Extraordinary and compelling reasons warrant the reduction;

…

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1. The commentary also provides that a defendant's rehabilitation, standing alone, cannot be the sole grounds for a sentence reduction under § 3582(c). *Id.*

"In the wake of the First Step Act, numerous courts have recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence – and may do so under the 'catch all' provision similar to that recognized in U.S.S.G. Manual §1B1.13 n.1(D), that is, 'an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)' relating to prisoner health or family relations." *United States v. Owens,* No. 97-CR-2546-CAB, ECF No. 93 (S.D. Cal. March 20, 2020) (quoting *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020)). After considering the issue, a number of district courts have held "'they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons.' In other words, 'district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release.'" *Owens,* No. 97-CR-2546-CAB (quoting *Young,* 2020 WL 1047815, at 6.). "While Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i)

vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Decator,* 452 F. Supp. 3d 320, 324 (D. Md.), aff'd sub nom. *United States v. McCoy,* 981 F.3d 271 (4th Cir. 2020); *see also United States v. Redd,* 444 F. Supp. 3d 717, 725 (E.D. Va. 2020) ("Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance, particularly since it would be unlikely that the BOP Director would determine that an extraordinary and compelling reason exists under Application Note 1(D) but then decline to file a motion for compassionate release based on that determination.").

Ngo's motion arises out of the First Step Act's change to the ability of prosecutors to "stack" multiple counts of firearms violations under Section 924(c). Previously, and in Ngo's case, an offender would be faced with "stacked" charges of two Section 924(c) counts from the same indictment, without a prior conviction of violating Section 924(c). This resulted in defendants without a previous weapons conviction being charged in the same indictment for both a first offense and a "second or subsequent offense" under Section 924(c), and facing a 20- or 25-year mandatory minimum sentence. Pursuant to the changes in the First Step Act, "an offender now faces a mandatory five-year consecutive sentence, rather than an enhanced 20 or 25 year sentence, for a second or subsequent § 924(c) conviction when multiple § 924(c) offenses are charged in the *same* indictment without a previous final § 924(c) conviction." *Redd,* 444 F. Supp. 3d at 720.

Ngo argues that "[t]he disproportionately long sentence [he] is serving, compared to what he would serve after the First Step Act's clarification of § 924(c) stacking, along with his rehabilitation constitute an extraordinary and compelling reason for a sentence reduction." (ECF No. 60 at 8, ECF No. 67 at 8.) Ngo's sentence was calculated based on stacking the two § 924(c) counts from the same indictment to which he was convicted.

6

Indeed, if Ngo had been sentenced today, then his sentence would be considerably less, because pursuant to the First Step Act, "§ 924(c) counts can only be stacked if the second offense occurs after a final conviction on the first offense."  *United States v. O'Bryan,* No. 96-10076-03-JTM, 2020 WL 869475, at *1 (D. Kan. Feb. 21, 2020).

Several courts have held that this change in the calculation of sentences may present an "extraordinary and compelling" reason under 18 U.S.C. § 3582(c)(1)(A), including the Fourth Circuit and courts in the Southern District of California.  *See e.g.* *McCoy,* 981 F.3d at 285–86 ("We think courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that *286 Congress itself views as dramatically longer than necessary or fair."); *Owens,* No. 97-CR-2546-CAB, ECF No. 93 ("[T]he Court finds that extraordinary and compelling reasons exist for a reduction in [defendant's] sentence based on the changes in how § 924(c) sentences are calculated as a result of the First Step Act, combined with the evidence of [defendant's] rehabilitation . . . ."); *United States v. Lott,* No. 95-CR-72-WQH, 2020 WL 3058093, at *3 (S.D. Cal. June 8, 2020) (The court "determined that the First Step changes to the § 924(c) may present an 'extraordinary and compelling' reason for a sentence reduction in this case . . . ."); *United States v. Saenz* No. 97-CR-2106-JLS, ECF No. 116 (S.D. Cal July 9, 2020) ("[S]everal courts have recognized that the disparity in sentencing after the amendment of 18 U.S.C. § 924(c) under the First Step Act constitutes an extraordinary and compelling reason for a sentence reduction . . . . This Court agrees, particularly when combined with Defendant's age-related medical conditions and risk factors associated with COVID-19.").  Specifically, *Owens* presents similar circumstances to the present case.  This Court agrees that the injustice of facing a prison term 15 years longer than it would be if he were sentenced today constitutes an "extraordinary and compelling" reason for a reduction of sentence; particularly when combined with evidence of Ngo's rehabilitation.

1
2
3

Accordingly, the Court finds that extraordinary and compelling reasons exist for a sentencing reduction based on the changes in how Section 924(c) sentences are calculated as a result of the First Step Act.

4

**C. Applicable Policy Statement from the Sentencing Commission**

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

The Court must also determine whether a reduction in Ngo's sentence is "consistent with applicable policy statements." 18 U.S.C. § 3582(c)(1)(A). "Congress directed the Sentencing Commission to promulgate policy statements 'that describe what should be considered extraordinary and compelling reasons for a sentence reduction [under 18 U.S.C. § 3582(c)(1)(A)], including the criteria to be applied and a list of specific examples[,]' restricting the Commission only to the extent that 'rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Redd,* 444 F. Supp. 3d at 724 (quoting 28 U.S.C. §§ 994(a)(2)(C) and (t)).  The Government argues that the Court is restricted to the three specific circumstances of a defendant's health, age, or family circumstances in determining whether there exists an "extraordinary and compelling" reason for sentence reduction.  Further, the Government contends the BOP, and not the Court, has "discretion, based on its institutional experience, to determine other reasons that could be extraordinary."  (ECF No. 66 at 11.) In other words, the Government opines that the Court may not rely on the "catch-all" provision in the commentary to Section 1B1.13 of the Sentencing Guidelines.

20
21
22
23
24
25
26

"[T]he Court concludes . . . that there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *Redd,* 444 F. Supp. 3d at 724; *see Brown,* 411 F. Supp. 3d at 449 ("[T]he Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" because it "never harmonized its policy statement with the [First Step Act]."). Courts that have come to this conclusion "have noted that § 1B1.13 was adopted before the First Step Act and does not contemplate motions for sentence

27
28

reductions filed by defendants themselves, or Congress' express purpose in passing the Act to increase the use of compassionate release." *Owens,* No. 97-CR-2546-CAB (citing *Maumau,* 2020 WL 806121, at *3 ("The fourth category, by contrast, allocates significant discretion to the Director of the Bureau of Prisons, which was consistent with pre-First Step Act law but is no longer appropriate, given Congress' decision to remove the Director's control over compassionate release motions.")).  The Court agrees that there is no applicable policy statement, and thus finds that a reduction in Ngo's sentence would not be inconsistent with any applicable policy statement.

**D. Legislative Intent**

There is currently a split among district courts as to whether Congress's failure to extend the § 924(c) changes retroactively in the First Step Act precludes courts from granting compassionate release on that basis.  *See, e.g. United States v. Johnson*, 2020 WL 6703090, at *3 (M.D.N.C. Nov. 13, 2020) ("Congress expressly declined to make the First Step Act's sentencing changes in § 924 retroactive . . . . [Defendant] cannot use the 'extraordinary and compelling' language from § 3582(a)(1)(A) to effectuate what Congress expressly chose not to do when it revised § 924(c).").  The Government argues the Court would be frustrating Congress' legislative intent were it to find that the change to sentencing under Section 924(c) constitutes an "extraordinary and compelling" reason for sentence reduction.  The Court disagrees with the Government's contentions.

If sentenced today, both the Government and Ngo agree that Ngo would be subject to a combined ten-year mandatory sentence for the weapons offenses, rather than the twenty-five-year sentence he received, due to the amendments to Section 924(c).  This sentencing disparity "has been recognized in legislative history as a potentially available basis for relief."  *Redd,* 444 F. Supp. 3d at n.8 (citing S. Rep. No. 98-225, at 55-56 (Aug 4. 1983) ("The [Senate Judiciary] Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by

changed circumstances.  These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, *and some cases in which the sentencing guidelines for the offense of which the defend[ant] was convicted have been later amended to provide a shorter term of imprisonment.*"  (emphasis added))).  Even if Congress had not intended the changes to Section 924(c) to apply retroactively across-the-board, that does not mean it did not intend courts to consider significant changes in the sentencing guidelines in determining whether compassionate release is appropriate in individual cases.  *See McCoy,* 981 F.3d at 286.  Accordingly, this Court finds that shortening Ngo's sentence would not be frustrating Congress' legislative intent.

### E.  § 3553(a) Factors

Before determining if compassionate release is warranted, the Court must also take into account public safety and the Section 3353(a) sentencing factors.  18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii); U.S.S.G. 1B1.13(2).  These factors include, among other things, the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Ngo argues that these factors favor his release, due to the changes brought about by the First Step Act, his post-offense rehabilitation, and, if released, his plans to return to a supportive family environment in San Diego.  Ngo further contends that "continued incarceration would be both disproportionate to the seriousness of his offense and to what Congress now deems appropriate for this kind of conduct."  (ECF No. 60 at 16 (quoting *Decator,* 452 F. Supp. 3d at 326).)

The sentencing guidelines indicate that courts should look to 18 U.S.C. § 3142(g) for guidance in determining whether the defendant poses a danger to the safety of any

97-CR-3397-GPC

other person or to the community.  U.S.S.G. 1B1.13(2).  The Court notes that Ngo was found guilty of two counts of armed bank robbery, and two counts of using a firearm during and in relation to those robberies.  While Ngo's offenses "were undoubtedly serious, [] his underlying offense conduct must be considered in connection with his prospects for recidivism and his level of dangerousness to the public were he released. But that underlying offense conduct must also be considered relative to the sentence he received and any reduced sentence he would receive."  *Owens,* No. 97-CR-2546-CAB (quoting *Redd,* 444 F. Supp. 3d at 727).

Ngo now has served approximately 23 years, which is roughly 75% of his full sentence. (ECF No. 60 at 1-3).  His anticipated release date is slightly over three years away, on March 15, 2024. (*Id.* at 13.)  If he is released, Ngo would live with his sister and her family in San Diego.  (ECF No. 60 at 17; ECF No. 60-2, Exhibit M at 72.)  Ngo's sister and brother-in-law are also willing to hire him at their businesses, a salon and a tea shop, respectively.  (*Id.*)  Further, Ngo's family belongs to a church in San Diego, and the community will welcome Ngo to join their congregation.  (*Id.*)  While in prison, Ngo has earned his GED and took a 600-hour course in Clerk Typing, earning the highest possible grades.  (ECF No. 60 at 15.)  Ngo has also held several jobs throughout his time in prison.  (*Id.*)  Although he had minor infractions in 2008, Ngo has had a minimal disciplinary record while in prison.  (*Id.*; ECF No. 60-2, Exhibit K at 67-68.)  The offenses for which Ngo was convicted were undoubtedly serious, as he not only caused significant financial loss to the banks but threatened tellers and bystanders with a firearm during the commission of the robberies.  However, had he been sentenced today, he likely would receive a total sentence of less than 16 years for the same conduct, assuming the sentences for the robbery offenses would have remained the same.  Ultimately, the Court finds that despite the seriousness of Ngo's offense, releasing Ngo after having served a majority of his sentence, and the equivalent of a far greater sentence than what

he likely would have received today for the same offenses, sufficiently mitigates the potential danger to the public and provide just punishment for the offenses. *Cf. Owens,* No. 97-CR-2546-CAB (granting release where defendant had served approximately 22 years of his 33-year sentence).

## III.  CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **GRANTED,** to be effective at the close of business today.  Ngo's sentence is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3852(c), effective immediately.  The term of supervised release previously ordered as to the Defendant will commence upon his release from imprisonment.  Defendant is ordered to report to the U.S. Probation Office in San Diego, California within 72 hours of his release from incarceration.

The Government shall serve copies of this order on the Warden of Sandstone FCI immediately.  The Warden shall immediately release Defendant Nam Nhat Ngo from custody.  In the event that the Warden or any party requests any clarification of or modification to this order, they shall email such request to the Court immediately upon receipt of the order.

Dated:  March 1, 2021

Hon. Gonzalo P. Curiel
United States District Judge

97-CR-3397-GPC